IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| IN RE | : | |
| | : | |
| ROGER A. RAY | : | CHAPTER 11 |
| | : | CASE NO. A09-42543-MGD |
| Debtor | : | |
| | : | |
| BRANCH BANKING AND TRUST COMPANY | : | |
| | : | |
| Plaintiff | : | ADVERSARY CASE |
| | : | NO. _____ |
| v. | : | |
| | : | |
| ROGER A. RAY | : | |
| | : | |
| Defendant | : | |

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

COMES NOW Branch Banking and Trust Company, Plaintiff (hereinafter "Plaintiff"),

and files this Complaint to Determine Dischargeability of Debt and shows the Court as

follows:

### PARTIES AND JURISDICTION

1.

Plaintiff is a creditor of the above-named Debtor and has three claims in this case in the

approximate amounts of $10,177.14, $19,897.91 and $7,836.62 respectively.  The loans were

given and security was pledged as Collateral for the each loan.  The Collateral are a 2003

Coachman,  a 2007 Sandpiper and a 2005 Tahoe.  All of these are campers.

2.

Defendant Roger A. Ray (hereinafter "Debtor") filed a petition for relief under Chapter 11 on May 3, 2009 in the Eastern District of Tennessee and the case was transferred to the Northern District of Georgia on June 26, 2009.

3.

Debtor is subject to the jurisdiction of this Court.

4.

This is an action under 11 U.S.C. §523 for a determination that the indebtedness owed to Plaintiff is excepted from discharge.

5.

This Court has jurisdiction of this case under 28 U.S.C. §§157 and 1334.

6.

This Adversary Proceeding constitutes a core proceeding under 28 U.S.C. §§157(b)(2)(A), (I), and (O).

## COUNT 1
## 11 U.S.C. §523(a)(6)

7.

Paragraphs 1 through 6 are hereby realleged in their entirety and incorporated herein by reference.

8.

On July 24, 2008 Defendant financed a 2003 Coachman TT Chaparral with Plaintiff.  The retail note and security agreement and the Georgia Certificate of Title is attached hereto as Exhibit "A".

9.

On July 29, 2008, Defendant financed a 2007 Sandpiper TT 305RLW with Plaintiff.  The retail note and security agreement are attached hereto as Exhibit "B".  No title was ever issued listing Plaintiff as lienholder.

10.

On December 19, 2006 Defendant financed a 2005 Tahoe TT Transport with Plaintiff. The retail note and security agreement are attached hereto as Exhibit "C".  No title was ever issued listing Plaintiff as lienholder.

11.

Defendant is self employed under his corporation Roger A. Ray Enterprises, Inc., according to Defendant's Schedule I.  His occupation is in Camper Sales and Service.  He has been employed for ten years with the company.

12.

At the 341 meeting of Creditors, Defendant claimed he sold the 2003 Coachman even though Plaintiff had a lien on the vehicle.  He could not testify as to the whereabouts of the vehicle.

13.

The Defendant failed to apply for Plaintiff's lien on the 2007 Sandpiper.

14.

The Defendant failed to apply for Plaintiff's lien on the 2005 Tahoe.

15.

Defendant has harmed Plaintiffs's Collateral.  He denies knowledge of the whereabouts of the property and openly testified that he sold the property on the 2003 Coachman, in which Plaintiff has a lien, to a third party.  After receiving financing from Plaintiff, Defendant knowingly failed to apply for the liens on the 2007 Sandpiper and 2005 Tahoe.  Defendant, being employed in camper sales for ten years, had full knowledge of the process he should have followed to put Plaintiff as lien holder on all of the Collateral.

16.

Defendant sold the 2007 Sandpiper to a Donald and Donna Flack on September 28, 2008.  The sale was classified as a Dealer Sale, attributed to North Georgia RV Center, which lists the same address, 1229 Christian Road, Ringold, Georgia 30736 as Roger A. Ray Enterprises, Inc. as evidenced in Schedule I of Defendant's Petition.  See Exhibit "D".   Defendant knowingly sold the Collateral, which he had already previously pledged as security, just two months after receiving financing from Plaintiff.

17.

Defendant sold the 2005 Tahoe to a third party on May 25, 2007 to a William Lamar

Roberts. See Exhibit "E". Again, Defendant disposed of the Collateral he had previously

pledged to Plaintiff as security approximately six months prior.

18.

Defendant used the property he pledged to Plaintiff and sold said Collateral to third

parties. Plaintiff is unable to locate the Collateral to recover and potentially mitigate their losses.

Furthermore, Plaintiff would not repossess the Collateral from third parties who were bona fide

purchasers of the 2007 Sandpiper and the 2005 Transport.

19.

Defendant's actions are not dischargeable pursuant to 11 U.S.C. §523(a)(6).

## COUNT II
## 11 U.S.C. §523(a)(2)A)

20.

Paragraphs 1 through 19 are hereby realleged in their entirety and incorporated herein by

reference.

21.

Defendant's actions were committed with actual fraud. Defendant was fully aware that he

had used the Collateral as security to receive financing from Plaintiff, but sold the Collateral to third

parties regardless of said agreement. Defendant is in the camper sales business and received the

loans from Plaintiff under false pretenses, and further erred by failing to provide two (2) of the liens

on the Collateral and selling each of the Collateral to third parties.

22.

Defendant should not be allowed to discharge this debt based on the fraud pursuant to U.S.C. Section 523(a)(2)(A).

WHEREFORE, Plaintiff prays that this Court order a nondischargeable judgment against Debtor declaring the indebtedness owing to Plaintiff nondischargeable; for judgment in the amount of $10,177.14 plus post-judgment interest accruing at the rate of 9.49% per annum on the 2003 Coachman, $19,897.91 at 9.17% per annum on the 2007 Sandpiper and $7,836.62 at the rate of 10.09% per annum for the 2005 Tahoe; costs and attorneys fees; plus any other relief that this Court deems equitable and just.

This 1st day of September 2009.

The Law Office of
LEFKOFF, RUBIN & GLEASON, P.C.
Attorney for Plaintiff

By:_____/s/_____
Philip Rubin
Georgia State Bar No. 618525

5555 Glenridge Connector
Suite 900
Atlanta, Georgia  30342
(404) 869-6900

# BB&T   RETAIL NOTE AND SECURITY AGREEMENT

CUSTOMER NUMBER _____
NOTE NUMBER _____
DATE  July 24, 2008

**CREDITOR:** BRANCH BANKING AND TRUST COMPANY, 200 WEST SECOND STREET, WINSTON-SALEM, NORTH CAROLINA 27101

**DEBTOR(S):** ROGER A RAY
NAME

(In this Retail Note and Security Agreement (also called Contract) the words, I, me, my, mine and us mean each and all of those signing this Contract. The words you, your, and yours mean Branch Banking and Trust Company.) In return for a loan that I have received from you, I promise to pay to your Order at the office in the above city the amount of:

TWELVE THOUSAND FIVE HUNDRED DOLLARS & 00/100

U.S. $  12,500.00  (the "principal"), plus interest on the unpaid principal from the date of this Contract at the yearly (choose one only):

[X] FIXED RATE OF  9.490  %; OR

[ ] VARIABLE RATE OF _____ %, TO BE ADJUSTED _____ BASED UPON _____
(THE INITIAL RATE)                                                                         (INDEX + MARGIN)

but shall in no event exceed the maximum rate allowed under applicable law, together with insurance charges and LATE CHARGES if any, according to the **Payment Schedule** and other Contract terms as set forth below in the Special Regulation Z Truth in Lending Disclosure Box (herein Special Regulation Z **Disclosures**) and according to other Note terms as provided below:

**Interest:** Interest will be charged on that part of the principal which has not been paid and unless I have the right to rescind, will be charged beginning on the date of this Note and continuing until the full amount has been paid.

[ ] If checked here, I have the right to rescind this loan. If I choose not to do so, I understand my interest charges will begin to accrue on _____

**Security for Payment and Performance.** To protect you if I default in the payment or performance of any obligation arising under the terms of the Contract, I grant you a security interest in certain property and in all additions, accessions, parts, and equipment attached to property and in all substitutions, along with any proceeds of the property (hereinafter collectively referred to as "Collateral") as described below:

[ ] If checked here, I have given you a security interest in certain personal property as described in a separate Assignment or Security Agreement ("Security Agreement") and/or I have executed a security deed ("Security Deed") in favor of you which when recorded will be a lien on real property described in that document.

[X] If checked here, I have given you a security interest in certain personal property as described below.

Collateral Description:                                                                        MANUFACTURED HOME

| YEAR | MAKE | TYPE BODY | MODEL | SERIAL NUMBER(S) | SIZE | BEDROOMS |
|------|------|-----------|-------|------------------|------|----------|
| 2003 | Coachman | TT | Chapparell | ITC3D654653001941 | | |

OTHER _____

Except as to any collateral Borrower(s) now use or are purchasing to use as Borrower(s)' principal dwelling (such as a mobile home), this security interest shall also secure any other outstanding or future debts of Borrower(s) to Bank. The collateral will normally be kept at this address: _____
GA

If the property is affixed or is to be affixed to real estate, the real estate is described as follows: _____
and the record owner is: _____

## SPECIAL REGULATION Z DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost me | Amount Financed The amount of credit provided to me or on my behalf | Optional Payment Protection | Total of Payments The amount I will have paid after I have made all payments as scheduled |
|---|---|---|---|---|
| 10.047 % | E $  2,013.87 | $  12,400.00 | E $ | E $  14,413.87 |

MY PAYMENT SCHEDULE WILL BE:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 36 | $400.38 | Monthly, Beginning  August 24, 2008 |

SECURITY: I am giving a security interest in:

[ ] The goods or property being purchased.

[X] Other  Recreational Vehicles/Travel Trailers

Collateral securing other loans may also secure this loan.

FILING FEES AND TAXES $ _____

**PREPAYMENT:** If I pay off early, I will not have to pay a penalty. However, I understand that I will not be entitled to a rebate of my prepaid Finance Charges.

**REQUIRED DEPOSIT:** If your loan is secured by a deposit earning less than 5%, the annual percentage rate does not take into account your required deposit.

**LATE CHARGE:** If a payment or any part of a payment (except for Single Pay loans) is past due 10 or more days after the due date, I will be charged 5% (not to exceed a maximum of $250) of the amount of the payment past due. When an installment payment is past due 10 or more days, subsequent payments will first be applied to the past due balance.

**VARIABLE RATE:** [ ] If checked here, my loan contains a variable rate feature and is secured by my principal dwelling. Disclosures about the variable rate feature have been provided to me earlier. The maximum Annual Percentage Rate that may be imposed is 18%, or 16% if your loan amount is $25,000 or less.

[ ] If checked here, my loan contains a variable rate feature, but is not secured by my principal dwelling or is secured by my principal dwelling but has a maturity of one year or less. The ANNUAL PERCENTAGE RATE may increase or decrease on my loan as the _____ increases or decreases.

My rate will not change more often than _____ and it will not increase above _____ % nor decrease below _____ %. Any increase in rate will result in [ ] higher payments, or [ ] additional payments, or [ ] higher final payment.
(See HYPOTHETICAL VARIABLE RATE EXAMPLES below.)

ASSUMPTION NOTICE: If this loan finances the purchase of property to be used as my principal dwelling, someone buying my dwelling cannot assume the remainder of this loan under the original terms.

Information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties appears in my contract document.

E means an estimate                                      (If a box [ ] is not checked that term does not apply.)

## HYPOTHETICAL VARIABLE RATE EXAMPLES

**Higher Payments:** If my loan were for $5,000 at a rate of 15% with 36 monthly payments of $174.04 and the rate increased by 2% after three months, my payments would increase to $178.63.

**Additional Payments:** If my loan were for $5,000 at a rate of 15% with 36 monthly payments of $174.04 and the rate increased by 2% after three months, I would pay one additional payment of $174.04 and a final payment of $20.40.

**Higher Final Payment:** If my loan were for $5,000 at a rate of 15% with 36 monthly payments of $174.04 and the rate increased by 2% after three months, my final payment would increase to $365.43.

THIS AGREEMENT IS SUBJECT TO THE ADDITIONAL TERMS AND CONDITIONS FOUND ON PAGES 2, 3, AND 4 WHICH ARE INCORPORATED HEREIN BY REFERENCE

ACCOUNT# / NOTE#

1491GA (0704)



Exhibit "A"

BB&T CONFIDENTIAL

## ITEMIZATION OF AMOUNT FINANCED

The Amount Financed of $ ___12,400.00___ is distributed as follows:

Amount given to me directly _____ $ ___10,297.27___
Amount paid on my account _____ $ _____
_____ $ _____

Amount paid to others on my behalf

(a) Insurance Companies _____ $ _____
(b) Public Officials (Filing,
Recording Fees and Taxes) _____ $ _____

(c) Appraisal Fee _____ $ _____

(d) Attorney's Fees to _____ $ _____

(e) Title Insurance Premium
to _____ $ _____

(f) Other _____ _____ $ _____

Other ___BB&T___ _____ $ ___2,102.73___

(g) Origination Fee, Flood Fee _____ $ ___100.00___

Less: Prepaid Finance Charges (loan fee, flood fee, etc.) $ ___100.00___

### Insurance Products are

- Not a deposit or other obligations of, or guaranteed by BB&T or its affiliates.
- Not insured by the Federal Deposit Insurance Corporation (FDIC) or any other agency of the United States or by BB&T or its affiliates.
- If applicable, there is investment risk associated with the insurance product, including the possible loss of value.

### DRAFT AUTHORIZATION

Please debit my acct. # _____

for my loan payment each time it is due.

_____
Authorized Signature

### OPTIONAL BB&T PAYMENT PROTECTION OPTIONS

The purchase of BB&T Payment Protection is not required for obtaining credit and will not be provided unless I (we) sign below, boxes are checked to show the protection I (we) want, and I (we) sign the separate agreement for this protection. I (We) understand that I (we) may cancel the protection at any time. The protection is for the stated term of the Retail Note.

#### Protected Events

[ ] Yes, I want single Loss of Life and
Terminal Illness protection at a cost of: $ _____

[ ] Yes, we want joint Loss of Life and
Terminal Illness protection at a cost of: $ _____

[ ] Yes, I (primary protected borrower) want
Disability protection at a cost of: $ _____

Protected Debtor _____

Protected Debtor _____

[ ] Yes, I want Job Loss protection
at a cost of: $ _____

Protected Debtor or Co-Debtor _____

[X] No, I(we) do not want any Payment Protection or I(we) understand that I(we) am(are) not eligible for Payment Protection.

_____
Debtor's Initials

### PROPERTY INSURANCE—I may obtain Property Insurance from anyone I desire that is acceptable to you. If I obtain property Insurance from BB&T, I will pay the premium shown below. No Insurance is provided unless the premium is shown.

I want property insurance from BB&T at a cost of

$ _____ for a term of _____ months.

---

THIS CONTRACT IS SIGNED AND ACCEPTED SUBJECT TO THE ADDITIONAL TERMS AND PROVISIONS CONTAINED ON PAGES 3 AND 4 WHICH ARE MADE PART OF THIS CONTRACT BY REFERENCE

EXECUTION/ACKNOWLEDGEMENT OF RECEIPT OF DISCLOSURES

The Undersigned acknowledge(s) receipt of a completed copy of this Note and Disclosure contained herein which Disclosures were made prior to signing. Witness our hand(s) and Seal(s), which are adopted by us.

WITNESS: _Chris Derrell_   Debtor _Roger A. Ray_ (SEAL)
ROGER A RAY

WITNESS: _____   Debtor _____ (SEAL)

WITNESS: _____   Debtor _____ (SEAL)

WITNESS: _____   Debtor _____ (SEAL)

BB&T CONFIDENTIAL

I491GA (0704)

I ALSO AGREE TO THESE ADDITIONAL TERMS:

**Payments.** I have promised to repay this Contract under the payment schedule as set forth on page 1 in the Special Regulation Z Disclosure box. I understand that you will normally apply all full and timely scheduled installments under this Contract first to accrued interest, then to unpaid principal balance, then to the unpaid principal balance. If you repay this Contract at any time, either in full or in part, provided I also pay the payment protection fees, if any, then to the unpaid principal balance. If you repay this Contract at any time, either in full or in part, provided I also pay the payment protection fees, if any, and accrued interest due through the date of my early payment, and repay closing costs as required by this Contract. Bank shall not be obligated to accept any check, money order, or other payment instrument marked "payment in full" on any disputed amount due hereunder, and Bank expressly reserves the right to reject all such payment instruments. Borrower agrees that tender of its check or other payment instrument so marked will not satisfy or discharge its obligation under this Note, disputed or otherwise, even if such check or payment instrument is inadvertently processed by Bank unless such payment is in fact sufficient to pay the amount due hereunder.

Borrower agrees that the only interest charge is the interest actually stated in this Note, and that any loan or origination fee shall be deemed charges rather than interest, which charges are fully earned and non-refundable. It is further agreed that any late charges are not a charge for the use of money but are imposed to compensate Bank for some of the administrative services, costs and losses associated with any delinquency or default under this Note, and said charges shall be fully earned and non-refundable when accrued. All other charges imposed by Bank upon Borrower in connection with this Note and the loan including, without limitation, any commitment fees, loan fees, facility fees, origination fees, discount points, default and late charges, prepayment fees, statutory attorneys' fees and reimbursements for costs and expenses paid to third parties or for other services, and costs or losses incurred and to be incurred by Bank in connection with this Note and the loan shall under no circumstances be deemed to be charges for the use of money. All such charges shall be fully earned and non-refundable when due. This Paragraph is executed for the purpose of clarifying the status of charges of the Loan for purpose of O.C.G.A. § 7-4-2(a)(1) and (a)(3).

**Estimated Credit Terms.** I understand that the disclosed charges for Payment Protection coverage are applied on a daily basis. In addition, the interest accrues on the outstanding principal balance on a daily basis. Consequently, the amount you have disclosed for the Finance Charge, Payment Protection charges and the Total of Payments are estimates and the actual amounts paid may increase or decrease based upon my payment habits. Prime Rate. If the words "Prime Rate," "Bank Prime Rate," "BB&T Prime Rate," "Bank's Prime Rate," or "BB&T's Prime Rate" are used in this Agreement, they shall refer to the rate announced by the Bank from time to time as the Prime Rate. I understand the Bank makes loans both above and below the Prime Rate and uses indexes other than the Prime Rate. Prime Rate is the name given a rate index used by the Bank and does not in itself constitute a representation of any preferred rate or treatment.

**Security.** Unless otherwise provided herein, it is expressly understood and agreed that any and all Collateral (including but not limited to, real property, personal property, fixtures, inventory, accounts, instruments, general intangibles, documents, chattel paper and equipment) given as security to insure my faithful performance and that of any third party or any or all obligations to you, however created, whether now existing or hereafter arising shall remain as security for the Retail Note(s). It is understood and agreed that if you release any property herein, you will not be required or obligated to take any further steps to release said property from any lien or security interest unless you determine, in your sole discretion, that you may do so without consequence to your secured position and relative priority in other property; and unless I bear the reasonable cost of such action. All homestead and exemptions are hereby waived.

**Severability.** Whenever possible, the provisions of this Contract shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Contract shall be prohibited by or invalid under such law, such provisions shall be ineffective to the extent of any such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Contract.

**Ownership and Disposition.** I am the owner of the collateral, and if there is a title to the Collateral, I will promptly deliver it upon request. I will not sell, lease, make a gift of, create a lien upon or otherwise dispose of the Collateral without your prior written consent.

**Location and Inspection.** You have the right to inspect the Collateral at any reasonable place and time. I will cooperate fully to make the Collateral available for your inspection within three days of your request. I will keep the property at the address shown on the reverse and within the State of Georgia. I shall not use the Collateral outside the United States without your prior written consent. If I move the Collateral to another location, I shall promptly notify you.

**Additions and Substitutions of Property.** All equipment, accessories and parts added by me will become part of the Collateral by accession. With your prior written consent, I may substitute other property for the Collateral in which event, all rights, duties, obligations, remedies and security interests shall cover fully any such substituted property.

**Financing Statement.** I will sign any financing statements, continuation statements and security interests filing statements regarding the Collateral and will pay all expenses of preparing and recording such statements when requested by you. I also grant you my Power of Attorney, which is irrevocable and is coupled with an interest, and which shall be effective so long as any amount is unpaid on the obligations secured by this contract and which gives you the right to sign my name on any financing statement you wish to file. I further specifically authorize you to file financing statements without my signature in all jurisdictions you believe necessary.

**Other Security Interests.** There are no other security interests or any other liens on the Collateral other than yours and those which I have disclosed to you in writing. I will not place, or allow to be placed any other security interest or lien on the Collateral while this Contract is still in force without your prior written consent. Should a lien of any kind be placed on the Collateral, I will promptly see that it is paid, satisfied, cancelled and removed.

**Maintenance.** I will keep the Collateral in good condition and good repair and I will not allow anything to be done to or with the Collateral that would lessen its value, except for normal-use.

**Insurance.** I will keep the collateral insured at all times with the type of insurance and in such manner as you require. I shall pay all premiums for such insurance when they are supposed to be paid so the insurance will not lapse. If the collateral is damaged or destroyed, I understand that it is my loss and not yours. If I do not keep the required insurance in force or do not pay the premiums when due, you can force place collateral protection insurance which does not provide liability coverage, but which insures your interest in the collateral with a policy written for the remaining term of my loan and backdated to the date of any lapse in coverage. I authorize you to obtain coverage as contained in your program of insurance and collateral protection policy as in effect from time to time. The forms of which are incorporated herein by reference which may include coverage in the U.S., Mexico, and Canada, a maximum of $50,000.00 coverage limited to the least of the cost to repair or replace any vehicle with another of like kind and quality, actual cash value or the net payoff on my loan. I authorize you to obtain this coverage and acknowledge you will earn a commission for placing this insurance. You may add the cost of this coverage to the outstanding balance of the Contract and it shall bear interest at the lesser of the Contract Rate or sixteen percent (16%) per annum until paid. You may also increase the amount of my monthly payment such that the loan will be paid at maturity (may include irregular final payment). In the alternative, a balloon payment will be due at maturity. However, I understand that you do not have to cover the collateral with insurance. If you do not insure the collateral, none of your rights or remedies against me will be prejudiced. I agree that only the primary debtor will receive notices regarding insurance matters and corresponding modifications to my payment schedule, if any. Any amount you pay for me will be secured by this security interest I have granted to you. All insurance proceeds under any insurance policy shall be payable to you for the amount of any money I owe to you. I will deliver to you the insurance policy or policies or a certificate of insurance, which may be applicable for insurance which I obtain. I give and assign to you any unearned insurance premiums which may be returned on cancellation of any insurance policy and agree that refund of any collateral protection insurance placed by you will be calculated and paid under the "Rule of 78's". I appoint you my attorney-in-fact, which is irrevocable and coupled with an interest, to settle any insurance claim and to endorse any draft or check which may be payable to me so as to collect any unearned insurance premiums or insurance proceeds. I understand that all insurance proceeds and returned insurance premiums received by you will be applied against the money I owe you and any balance remaining will be paid to me. You owe me no fiduciary duty as to claims or placing insurance.

**Subordination.** I understand and agree that if I make a request of the Bank to subordinate the lien position of my account to another lienholder, you may charge and collect a fee of $100 for the processing costs associated with this service.

**Repayment of Closing Costs.** If the Bank pays any or all of the closing costs to establish my account, and I elect to terminate my account within three years of the origination date, I will be asked to repay some or all of the closing costs paid to outside providers on my behalf. These costs may include, but are not limited to; title insurance premiums, attorney, appraisal, flood certification, and recording fees.

**Dishonored Instrument Charge.** I understand that if I make a payment by an instrument that is not paid or is dishonored by the institution on which it was drawn, you may charge $25.00 or 5 percent of the face amount of the instrument, whichever is greater, as a bad instrument charge. Release Fee. You may be assessed a lien release fee, at the time your loan is paid off, of an estimated amount of $31.00 which will be based on the amount currently charged by the county or state for releasing your lien.

**Events of Default.** I will be in default under this Contract if any of the following events take place:

1. If I fail either to make a payment on time, or to perform all of my obligations under this Contract or under any other agreement I have made with you either now or in the future; or
2. If I or any other person or entity obligated under any other contract, note, agreement or document given in connection with this credit transaction, either now or in the future (herein "Obligor"), violates any term, provision or covenant contained therein; or
3. If I fail to furnish you information sufficient to verify my identity as required under the USA Patriot Act or
4. If I or any Obligor make a false or materially misleading statement to you in connection with this or any other credit transaction; or
5. If I or any Obligor die, become insolvent or bankrupt; or
6. If the Collateral, if any, has been substantially damaged or lost or stolen; or
7. If I or any Obligor fail(s) to provide adequate and continuous insurance on any Collateral, as required by the Retail Note(s) or this Agreement or any other agreement with you; or
8. If I or any Obligor should use the Collateral, if any, in violation of any law, rule, regulation or government order; or
9. If a judgment or lien, including a tax lien should be filed or levied against me, or an attachment or garnishment should be issued against any of my property or rights; or
10. If you should consider any of my obligations to you under this or under any other agreement, contract, note or instrument unsafe or not completely secure, or if you should believe, in good faith, that my chances of payment or of other performance under this or under any other agreement, contract, note or instrument have been impaired.

**Repossession.** I agree that if I do not comply with the terms of this Contract, then you may repossess the Collateral and take possession of it immediately without giving me notice before doing so and without filing an action with the court. You have my permission to enter any premises where the Collateral is located to recover the Collateral. If requested, I will promptly get the Collateral together and deliver it to you.

**Rights and Remedies.** If I am in default, you shall have all rights and remedies as provided under the Georgia Uniform Commercial Code and other remedies allowed by law, including the right of repossession and power of sale, which is coupled with an interest and is irrevocable. All of your rights and remedies are cumulative and may be exercised by you concurrently. Failure or delay by you to exercise any of your rights and remedies at any time will not mean that you have given up or lost the right to exercise that right or remedy or any other right or remedy at a later time.

**Acceleration and Waiver of Notice.** If I am in default, you may require me to pay at once the total balance due under this Contract, along with other debts I might owe to you, without giving me prior notice of demand, dishonor, presentment, or protest.

**Right of Offset.** If I am in default, I authorize you to exercise immediately your common law right of offset against any monies or credits I might have with you.

BB&T CONFIDENTIAL

**No Waiver of Rights.** You may accept late or partial payments as well as delay enforcing any of your rights on any occasion, without losing your rights under this Contract.

**Collection Fees.** If I default under this Contract, I agree to pay all your collection and legal expenses, including your reasonable attorneys' fees. I agree that 15% of the sum of the unpaid principal and all accrued interest owing shall amount to your reasonable attorneys' fees.

**Credit Investigation.** I consent to your obtaining a consumer credit report for the purpose of reviewing my account, taking collection action on the account or for other legitimate purposes associated with the account. I understand that I may write or call any BB&T branch office with questions or inquiries about my account and that I should furnish my complete account number when doing so. I understand that if I dispute the accuracy or completeness of any information supplied by BB&T in a consumer report furnished by a consumer reporting agency I may write: BB&T Loan Services, MC: 100-50-02-57, P.O. Box 2306, Wilson, NC 27893.

**Responsibility of Persons Under This Contract.** If more than one person signs this Contract, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in the Contract. Any Guarantor, surety, or endorser of this Contract is also obligated to do these things. You may enforce your rights under this Contract against each of us individually or against all of us together.

**Actions Taken on My Behalf.** If I fail to do anything I am required to do under this Contract or any other agreement with you, such as to discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Collateral place and pay for any insurance thereon, order and pay for the repair, maintenance and preservation thereof or pay any necessary recording or filing fees, you may, in your sole discretion and without further obligation, take these acts on my behalf as you see fit. These amounts so spent will be added to the unpaid balance of what I owe you under this Contract and the rate of interest accruing on the unpaid principal balance of the Contract will be applied until I fully repay you. You may, but are not obligated to, increase the amounts of my payments under this Contract to cover the resulting total unpaid balance. I agree to make those new payment amounts if you so notify me. You also will be protected by your security interest(s) as to these amounts in that Collateral securing shall also secure these amounts. However, any Payment Protection will not cover these additional amounts or any resulting additional interest. I understand that any insurance purchased for me upon my failure to maintain such insurance, such as property insurance, will only protect your interest in the Collateral. You are under no obligation to purchase insurance to protect my interest, if any, in the Collateral, or to otherwise satisfy any legal requirement such as those for liability insurance covering personal injury and property damage to others.

**Governing Law.** This Contract shall be governed by the law of the State of Georgia; provided however that any Security Deed encumbering the Borrower's property located in a state other than Georgia shall be governed by and construed in accordance with laws of that state, and the Borrower hereby submits to the jurisdiction of the state in which the property is located in connection with any foreclosure or enforcement proceeding undertaken in connection with the Borrower's property. This is the entire agreement between you and me. No other agreements or understandings exist outside of this document. Time is of the essence of this Agreement.

**Arbitration.** Any unresolvable controversy or claim between us including but not limited to those arising out of or relating to this instrument, agreement, or document or any related instruments, agreements, or documents shall be determined by binding arbitration in accordance with the Comprehensive Arbitration Rules and Procedures of J.A.M.S./ Endispute or any successor thereof ("J.A.M.S."), and the rules set forth herein. Judgment upon any arbitration award may be entered in any court having jurisdiction. The arbitration award shall include (1) a provision that the prevailing party in such arbitration shall recover its costs of the arbitration and reasonable attorneys' fees from the other party; and (2) the amount of such costs and fees.

Arbitration hearings will be held in Winston-Salem, North Carolina for North Carolina Contracts, Columbia, South Carolina for South Carolina Contracts and Richmond, Virginia for Virginia Contracts or such other city as you and I may mutually agree. The arbitration shall be administered by J.A.M.S., who will appoint one (1) arbitrator who shall be a retired judge or retired attorney experienced in bank lending contracts. All arbitration hearings will be commenced within 90 days of the other party's receipt of written demand for arbitration; further, the arbitrator only shall be permitted, upon a showing of cause, to extend the commencement of such hearing for up to an additional 60 days. Any controversy or claim subject to this arbitration provision not submitted to arbitration within one (1) year after such cause of action has accrued shall be deemed barred,notwithstanding any longer statute of limitations available at law. Notwithstanding the foregoing, unless previously arbitrated in the event of any default in an obligation I owe to you, you may file a civil action against me to collect amounts owed by me to you at any time within three (3) years form the last event of default.

Nothing in this arbitration provision shall be deemed to (1) Permit the arbitration of a controversy or claim (even identical) with another person or permit class-wide arbitration; or (2) limit the applicability of any otherwise applicable waivers contained in this instrument, agreement, or document; or (3) be a waiver by you of the protection afforded to it by otherwise applicable federal or state law; or (4) limit your right (a) to exercise self-help remedies against me such as (but not limited to) setoff; (b) to institute and maintain foreclosure or sale against any personal property collateral, or (c) to petition a court for provisional or ancillary remedies such as (but not limited to) injunctive relief or writ of possession. You may exercise such self-help rights, foreclosure upon such property, or obtain such provisional or ancillary remedies before, during, or after the pendency of any arbitration proceeding brought pursuant to this instrument, agreement, or document. Neither this exercise of self-help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies shall constitute a waiver of the right of any party, including the claimant in any such action, to arbitrate the merits of the controversy or claim occasioning resort to such remedies.

## Guaranty of Third Persons

By signing below and to induce you to grant the requested credit extension to the Debtor(s), I/we unconditionally guarantee the prompt payment when due to you, Branch Banking and Trust Company, and any other holder of the above Note of the entire amount owing on the Note if the Debtor (s) default(s) in payment or performance of any obligations to you. This is a guaranty of payment and not of collection. I/we waive notice of acceptance of this guaranty and agree you don't have to notify me/us if any payments under the Note have not been paid or if the Debtor(s) has (have) otherwise defaulted. You can change the terms of the Note or the schedule of payments or release any security or any Debtor without notifying me or releasing me from responsibility under this guaranty. I agree to be bound by all terms of the Note and agree to pay all amounts owing under the Note, on demand, without requiring you to bring suit or take other action against the Debtor(s) or any collateral for the Contract. In addition, each of the undersigned expressly waives any right to require you to recover against the Debtor(s) or any collateral pursuant to any applicable law, statute or regulation, including the provisions of O.C.G.A. § 10-7-24 et seq. If you sue to enforce this guaranty agreement, I/we agree to pay the reasonable attorneys' fees of the holder of this guaranty equal to 15% of the outstanding balance owing on the Contract.

This guaranty is the joint and several obligation of each of us. Witness the hand(s) and seal(s) of the undersigned. I/We herewith adopt as my/our seal the word (SEAL) appearing above, beside or near my/our signature(s) below:

_____          _____ (SEAL)
          Witness

                                          _____
                                                   (Address)

_____          _____ (SEAL)
          Witness

                                          _____
                                                   (Address)

BB&T CONFIDENTIAL

BB&T CONFIDENTIAL

# Georgia Certificate of Title

**DISCLAIMER: DO NOT ACCEPT THIS TITLE WITHOUT THE SECURITY THREAD LOCATED APPROXIMATELY TWO INCHES FROM LEFT EDGE.**

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | TYPE OF BODY | MODEL | CYL | DATE ISSUED |
|---|---|---|---|---|---|---|
| 1TC3B054633001941 | COACHMAN | 2003 | CAMPER | CHAPARRAL | | 08/31/2006 |

| DATE VEHICLE PUR. | FUEL | NEW OR USED | ODOMETER* | PREVIOUS TITLE NBR/STATE OF ISSUE | NBR OF LIENS | COLOR | CURRENT TITLE NUMBER |
|---|---|---|---|---|---|---|---|
| 08/14/2006 | | USED | EXEMPT | 774394050258907 GA | 1 | | 600294062435907 |

**OWNER**

ROGER ALLEN RAY

RINGGOLD GA 30736-2429

MAIL TO

BRANCH BANK AND TRUST CO
PO BOX 1290
WHITEVILLE NC 28472-1290

**1ST LIEN OR SECURITY INTEREST**

BRANCH BANK AND TRUST CO
PO BOX 1290
WHITEVILLE NC 28472-1290

**2ND LIEN OR SECURITY INTEREST**

**3RD LIEN OR SECURITY INTEREST**

**RELEASE OF LIEN OR SECURITY INTEREST**

| | DATE OF RELEASE | SECURITY INTEREST HOLDER | AUTHORIZED AGENT |
|---|---|---|---|
| 1ST LIEN | _____ | _____ | BY _____ |
| 2ND LIEN | _____ | _____ | BY _____ |
| 3RD LIEN | _____ | _____ | BY _____ |

The Georgia Department of Revenue issued this title pursuant to the Motor Vehicle Certificate of Title Act and this title is subject to its provisions. The Department certifies that on application duly made, the person named herein is registered as the lawful owner of the vehicle described subject to any liens or security interests set forth and such liens or security interests as may subsequently be filed with the Commissioner.

19569179

STATE REVENUE COMMISSIONER

19569179

BB&T CONFIDENTIAL

Case 1:09-bk-12715    Claim 8-1    Filed 06/30/09    Desc Main Document    Page 3 of 7

# BB&T  RETAIL NOTE AND SECURITY AGREEMENT

CUSTOMER NUMBER _____
NOTE NUMBER _____
DATE  July 29, 2008

CREDITOR: BRANCH BANKING AND TRUST COMPANY, 200 WEST SECOND STREET, WINSTON-SALEM, NORTH CAROLINA 27101

DEBTOR(S):  ROGER A RAY
_____
NAME

(In this Retail Note and Security Agreement (also called Contract) the words, I, me, my, mine and us mean each and all of those signing this Contract. The words you, your, and yours mean Branch Banking and Trust Company.) In return for a loan that I have received from you, I promise to pay to your Order at the office in the above city the amount of:

TWENTY-TWO THOUSAND ONE HUNDRED FIVE DOLLARS & 00/100

U.S. $   22,105.00    (the "principal", plus interest on the unpaid principal from the date of this Contract at the yearly (choose one only):

[X] FIXED RATE OF   8.990  % OR

[ ] VARIABLE RATE OF _____%, TO BE ADJUSTED _____ BASED UPON _____
(THE INITIAL RATE)                                             (INDEX + MARGIN)

but shall in no event exceed the maximum rate allowed under applicable law, together with insurance charges and LATE CHARGES if any, according to the Payment Schedule and other Contract terms as set forth below in the Special Regulation Z Truth in Lending Disclosure Box (herein Special Regulation Z Disclosures) and according to other Note terms as provided below:

Interest:  Interest will be charged on that part of the principal which has not been paid and unless I have the right to rescind, will be charged beginning on the date of this Note and continuing until the full amount has been paid.

[ ] If checked here, I have the right to rescind this loan. If I choose not to do so, I understand my interest charges will begin to accrue on _____

Security for Payment and Performance. To protect you if I default in the payment or performance of any obligation arising under the terms of the Contract, I grant you a security interest in certain property and in all additions, accessions, parts, and equipment attached to property and in all substitutions, along with any proceeds of the property (hereinafter collectively referred to as "Collateral") as described below:

[ ] If checked here, I have given you a security interest in certain personal property as described in a separate Assignment or Security Agreement ("Security Agreement") and/or I have executed a security deed ("Security Deed") in favor of you which when recorded will be a lien on real property described in that document.

[X] If checked here, I have given you a security interest in certain personal property as described below.

Collateral Description:                                                                    MANUFACTURED HOME

| YEAR | MAKE | TYPE BODY | MODEL | SERIAL NUMBER(S) | SIZE | BEDROOMS |
|---|---|---|---|---|---|---|
| 2007 | Sandpiper | TT | 305RLW | 4X4FSAF237J021345 | | |
| OTHER | | | | | | |

Except as to any collateral Borrower(s) now use or are purchasing to secure Borrower(s)' principal dwelling (such as a mobile home), this security interest shall also secure any other outstanding or future debts of Borrower(s) to Bank. The collateral will normally be kept at this address: _____
3936 MILLER DRIVE Dalton, GA 30721-0000
If the property is affixed or is to be affixed to real estate, the real estate is described as follows: _____
and the record owner is: _____

## SPECIAL REGULATION Z DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost me | Amount Financed The amount of credit provided to me or on my behalf | Optional Payment Protection | Total of Payments The amount I will have paid after I have made all payments as scheduled |
|---|---|---|---|---|
| 9.187  % | E $  5,522.34 | $  22,005.00 | E $ | E $  27,527.34 |

MY PAYMENT SCHEDULE WILL BE:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | $458.79 | Monthly, Beginning  August 29, 2008 |

SECURITY: I am giving a security interest in:
[X] The goods or property being purchased.
[ ] Other _____

Collateral securing other loans may also secure this loan.

FILING FEES AND TAXES $ _____

PREPAYMENT: If I pay off early, I will not have to pay a penalty. However, I understand that I will not be entitled to a rebate of my prepaid Finance Charges.

REQUIRED DEPOSIT: If your loan is secured by a deposit earning less than 5%, the annual percentage rate does not take into account your required deposit.

LATE CHARGE: If a payment or any part of a payment (except for Single Pay loans) is past due 10 or more days after the due date, I will be charged 5% (not to exceed a maximum of $250) of the amount of the payment past due. When an installment payment is past due 10 or more days, subsequent payments will first be applied to the past due balance.

VARIABLE RATE: [ ] If checked here, my loan contains a variable rate feature and is secured by my principal dwelling. Disclosures about the variable rate feature have been provided to me earlier. The maximum Annual Percentage Rate that may be imposed is 18% or 16% if your loan amount is $25,000 or less.

[ ] If checked here, my loan contains a variable rate feature, but is not secured by my principal dwelling or is secured by my principal dwelling but has a maturity of one year or less. The ANNUAL PERCENTAGE RATE may increase or decrease on my loan as the _____ increases or decreases.

My rate will not change more often than _____ and it will not increase above _____%; nor decrease below _____%. Any increase in rate will result in [ ] higher payments, or [ ] additional payments, or [ ] higher final payment.
(See HYPOTHETICAL VARIABLE RATE EXAMPLES below.)

ASSUMPTION NOTICE: If this loan finances the purchase of property to be used as my principal dwelling, someone buying my dwelling cannot assume the remainder of this loan under the original terms.

Information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties appears in my contract document.
E means an estimate    (if a box [ ] is not checked that term does not apply.)

### HYPOTHETICAL VARIABLE RATE EXAMPLES

Higher Payments: If my loan were for $5,000 at a rate of 15% with 36 monthly payments of $174.04 and the rate increased by 2% after three months, my payments would increase to $178.63.
Additional Payments: If my loan were for $5,000 at a rate of 15% with 36 monthly payments of $174.04 and the rate increased by 2% after three months, I would pay one additional payment of $174.04 and a final payment of $20.40.
Higher Final Payment: If my loan were for $5,000 at a rate of 15% with 36 monthly payments of $174.04 and the rate increased by 2% after three months, my final payment would increase to $365.43.

THIS AGREEMENT IS SUBJECT TO THE ADDITIONAL TERMS AND CONDITIONS FOUND ON PAGES 2, 3, AND 4 WHICH ARE INCORPORATED HEREIN BY REFERENCE


Exhibit "B"

BB&T CONFIDENTIAL

## ITEMIZATION OF AMOUNT FINANCED

The Amount Financed of $ _____ 22,005.00 _____ is distributed as follows:

| | | |
|---|---|---|
| Amount given to me directly | $ | 0.00 |
| Amount paid on my account | $ | |
| | $ | |

Amount paid to others on my behalf

| | | |
|---|---|---|
| (a) Insurance Companies | $ | |
| (b) Public Officials-(Filing, Recording Fees and Taxes) | $ | |
| (c) Appraisal Fee | $ | |
| (d) Attorney's Fees to | $ | |
| (e) Title Insurance Premium to | $ | |
| (f) Other | $ | |
| Other  North GA RV Center | $ | 22,005.00 |
| (g) Origination Fee, Flood Fee | $ | 100.00 |

Less: Prepaid Finance Charges (loan fee, flood fee, etc.)  $ _____ 100.00

---

**Insurance Products are**

. Not a deposit or other obligations of, or guaranteed by BB&T or its affiliates.
. Not insured by the Federal Deposit Insurance Corporation (FDIC) or any other agency of the United States or by BB&T or its affiliates.
. If applicable, there is investment risk associated with the insurance product, including the possible loss of value.

---

## DRAFT AUTHORIZATION

Please debit my acct. # _____

for my loan payment each time it is due.

_____

Authorized Signature

---

## OPTIONAL BB&T PAYMENT PROTECTION OPTIONS

This purchase of BB&T Payment Protection is not required for obtaining credit and will not be provided unless I (we) sign below, boxes are checked to show the protection I (we) want, and I (we) sign the separate agreement for this protection. I (We) understand that I (we) may cancel the protection at any time. The protection is for the stated term of the Retail Note.

Protected Events

[ ] Yes, I want single Loss of Life and Terminal Illness protection at a cost of:  $ _____

[ ] Yes, we want joint Loss of Life and Terminal Illness protection at a cost of:  $ _____

[ ] Yes, I (primary protected borrower) want Disability protection at a cost of:  $ _____

Protected Debtor _____

Protected Debtor _____

[ ] Yes, I want Job Loss protection at a cost of:  $ _____

Protected Debtor or Co-Debtor _____

[X] No, I(we) do not want any Payment Protection or I(we) understand that I(we) am(are) not eligible for Payment Protection.

Debtor's Initials

---

PROPERTY INSURANCE-I may obtain Property Insurance from anyone I desire that is acceptable to you. If I obtain property insurance from BB&T, I will pay the premium shown below. No insurance is provided unless the premium is shown.

I want property insurance from BB&T at a cost of

$ _____ for a term of _____ months.

---

**THIS CONTRACT IS SIGNED AND ACCEPTED SUBJECT TO THE ADDITIONAL TERMS AND PROVISIONS CONTAINED ON PAGES 3 AND 4 WHICH ARE MADE PART OF THIS CONTRACT BY REFERENCE**

EXECUTION/ACKNOWLEDGEMENT OF RECEIPT OF DISCLOSURES

The Undersigned acknowledge(s) receipt of a completed copy of this Note and Disclosure contained herein which Disclosures were made prior to signing. Witness our hand(s) and Seal(s), which are adopted by us.

WITNESS: _Shawn Cripps_____    Debtor _Roger A. Ray_____ (SEAL)
ROGER A RAY

WITNESS: _____    Debtor _____ (SEAL)

WITNESS: _____    Debtor _____ (SEAL)

WITNESS: _____    Debtor _____ (SEAL)

BB&T CONFIDENTIAL

1491GA (0704)

## I ALSO AGREE TO THESE ADDITIONAL TERMS:

**Payments.** I have promised to repay this Contract under the payment schedule as set forth on page 1 in the Special Regulation Z Disclosure box. I understand that you will normally apply all full and timely scheduled installments under this Contract first to accrued interest, then to the unpaid principal balance. I may repay this Contract at any time, either in full or in part, provided I also pay the payment protection fees, if any, and accrued interest due through the date of my early payment, and repay closing costs as required by this Contract. Bank shall not be obligated to accept any check, money order, or other payment instrument marked "payment in full" or any disputed amount due hereunder, and Bank expressly reserves the right to reject all such payment instruments. Borrower agrees that tender of its check or other payment instrument so marked will not satisfy or discharge its obligation under this Note, disputed or otherwise, even if such check or payment instrument is inadvertently processed by Bank unless in fact such payment is in fact sufficient to pay the amount due hereunder.

Borrower agrees that the only interest charge is the interest actually stated in this Note, and that any loan or origination fee shall be deemed charges rather than interest, which charges are fully earned and non-refundable. It is further agreed that any late charges are not a charge for the use of money but are imposed to compensate Bank for some of the administrative services, costs and losses associated with any delinquency or default under this Note, and said charges shall be fully earned and non-refundable when accrued. All other charges imposed by Bank upon Borrower in connection with this Note and the loan including, without limitation, any commitment fees, loan fees, facility fees, origination fees, discount points, default and late charges, prepayment fees, statutory attorneys' fees and reimbursements for costs and expenses paid by Bank to third parties or for damages incurred by Bank are and shall be deemed to be charges made to compensate Bank for underwriting and administrative services and costs and other services, and costs or losses incurred and to be incurred by Bank in connection with this Note and the loan and shall under no circumstances be deemed to be charges for the use of money. All such charges shall be fully earned and non-refundable when due. This Paragraph is executed for the purpose of clarifying the status of charges of the Loan for purpose of O.C.G.A. § 7-4-2(a)(1) and (a)(3).

**Estimated Credit Terms.** I understand that the disclosed charges for Payment Protection coverage are applied on a daily basis. In addition, the interest accrues on the outstanding principal balance on a daily basis. Consequently, the amount you have disclosed for the Finance Charge, Payment Protection charges and the Total of Payments are estimates and the actual amounts paid may increase or decrease based upon my payment habits. "Prime Rate. If the words "Prime Rate," "Bank Prime Rate," "BB&T Prime Rate," "Bank's Prime Rate," or "BB&T's Prime Rate" are used in this Agreement, they shall refer to the rate announced by the Bank from time to time as the Prime Rate. I understand the Bank makes loans both above and below the Prime Rate and uses indexes other than the Prime Rate. Prime Rate is the name given a rate index used by the Bank and does not in itself constitute a representation of any preferred rate or treatment.

**Security.** Unless otherwise provided herein, it is expressly understood and agreed that any and all Collateral (including but not limited to, real property, personal property, fixtures, inventory, accounts, instruments, general intangibles, documents, chattel paper and equipment) given as security to insure my faithful performance and that of any third party of any or all obligations to you, however created, whether now existing or hereafter arising shall remain as security for the Retail Note(s). It is understood and agreed that if you release any property herein, you will not be required or obligated to take any further steps to release said property from any lien or security interest unless you determine, in your sole discretion, that you may do so without consequence to your secured position and relative priority in other property; and unless I bear the reasonable cost of such action. All homestead and exemptions are hereby waived.

**Severability.** Whenever possible, the provisions of this Contract shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Contract shall be prohibited by or invalid under such law, such provisions shall be ineffective to the extent of any such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Contract.

**Ownership and Disposition.** I am the owner of the collateral, and if there is a title to the Collateral, I will provide it upon request. I will not sell, lease, make a gift of, or create a lien upon or otherwise dispose of the Collateral without your prior written consent.

**Location and Inspection.** You have the right to inspect the Collateral at any reasonable place and time. I will cooperate fully to make the Collateral available for your inspection within three days of your request. I will keep the property at the address shown on the reverse and within the State of Georgia. I shall not use the Collateral outside the United States without your prior written consent. If I move the Collateral to another location, I shall promptly notify you.

**Additions and Substitutions of Property.** All equipment, accessories and parts added by me will become part of the Collateral by accession. With your prior written consent, I may substitute other property for the Collateral in which event, all rights, duties, obligations, remedies and security interests shall cover fully any such substituted property.

**Financing Statement.** I will sign any financing statements, continuation statements and security interests filing statements regarding the Collateral and will pay all expenses of preparing and recording such statements when requested by you. I also grant you my Power of Attorney, which is irrevocable and is coupled with an interest, and which shall be effective so long as any amount is unpaid on the obligations secured by this contract and which gives you the right to sign my name on any financing statement you wish to file. I further specifically authorize you to file financing statements without my signature in any locations you believe necessary.

**Other Security Interests.** There are no other security interests or any other liens on the Collateral other than yours and those which I have disclosed to you in writing. I will not place, or allow to be placed any other security interest or lien on the Collateral while this Contract is still in force without your prior written consent. Should a lien of any kind be placed on the Collateral, I will promptly see that it is paid, satisfied, cancelled and removed.

**Maintenance.** I will keep the Collateral in good condition and good repair and I will not allow anything to be done to or with the Collateral that would lessen its value, except for normal use.

**Insurance.** I will keep the collateral insured at all times with the type of insurance and in such manner as you require. I shall pay all premiums for such insurance when they are supposed to be paid so the insurance will not lapse. If the collateral is damaged or destroyed, I understand that it is my loss and not yours. If I do not keep the required insurance in force or do not pay the premiums when due, you can force place collateral protection insurance which does not provide liability coverage, but which insures your interest in the collateral with a policy written for the remaining term of this insurance, and backdated to the date of any lapse in coverage. I authorize you to obtain this coverage as contained in your program of insurance and charge the premiums as in effect from time to time the terms of which are incorporated herein by reference which may include coverage in the U.S., Mexico, and Canada, a maximum of $50,000.00 coverage limited to the least of the cost to repair or replace any vehicle with another of like kind and quality, actual cash value or the net payoff on my loan. I authorize you to obtain this coverage and acknowledge you will earn a commission on the sale of this insurance. You may add the cost of this coverage to the outstanding balance of the Contract and it shall bear interest at the lesser of the Contract Rate or sixteen percent (16%) per annum until paid. You may also increase the amount of my monthly payment such that the loan will be paid at maturity (may include irregular final payment). In the alternative, a balloon payment will be due at maturity. However, I understand that you do not have to cover the collateral with insurance. If you do not insure the collateral, none of your rights or remedies against me will be prejudiced. I agree that only the primary debtor will receive notices regarding insurance matters and corresponding modifications to my payment schedule, if any. If any amount I now pay for me will be secured by this security interest which I have granted to you. All insurance proceeds under any insurance policy shall be payable to you for the amount of any money I owe to you. I will deliver to you the insurance policy or policies or a certificate of insurance, which may be applicable for insurance which I obtain. I give and assign to you any unearned insurance premiums which may be returned on cancellation of any insurance policy and agree that refund of any collateral protection insurance placed by you will be calculated and paid under the "Rule of 78's". I appoint you my attorney-in-fact, which is irrevocable and coupled with an interest, to settle any insurance claim and to endorse any draft or check which may be payable to me so as to collect any unearned insurance premiums or insurance proceeds. I understand that all insurance proceeds and returned insurance premiums received by you will be applied against the money I owe you and any balance remaining will be paid to me. You owe me no fiduciary duty as to claims or placing insurance.

**Subordination.** I understand and agree that if I make a request of the Bank to subordinate the lien position of my account to another lienholder, you may charge and collect a fee of $100 for the processing costs associated with this service.

**Repayment of Closing Costs.** If the Bank pays any or all of the closing costs to establish my account, and I elect to terminate my account within three years of the origination date, I will be asked to repay some or all of the closing costs paid to outside providers on my behalf. These costs may include, but are not limited to; title insurance premiums, attorney, appraisal, flood certification, and recording fees.

**Dishonored Instrument Charge.** I understand that if I make a payment by an instrument that is not paid or is dishonored by the institution on which it was drawn, you may charge $25.00 or 5 percent of the face amount of the instrument, whichever is greater, as a bad instrument charge. Release Fee. You may be assessed a lien release fee, at the time your loan is paid off, of an estimated amount of $31.00 which will be based on the amount currently charged by the county or state for releasing your lien.

**Events of Default.** I will be in default under this Contract if any of the following events take place:
1. If I fail either to make a payment on time, or to perform all of my obligations under this Contract or under any other agreement I have made with you either now or in the future; or
2. If I or any other person or entity obligated under any other contract, note, agreement or document given in connection with this credit transaction, either now or in the future (herein "Obligor"), violates any term, provision or covenant contained therein; or
3. If I fail to furnish you information sufficient to verify my identity as required under the USA Patriot Act; or
4. If I or any Obligor make a false or materially misleading statement to you in connection with this or any other credit transaction; or
5. If I or any Obligor die, become insolvent or bankrupt; or
6. If the Collateral, if any, has been substantially damaged or lost or stolen; or
7. If I or any Obligor fail(s) to provide adequate and continuous insurance on any Collateral, as required by the Retail Note(s) or this Agreement or any other agreement with you; or
8. If I or any Obligor should use the Collateral, if any, in violation of any law, rule, regulation or government order; or
9. If a judgment or lien, including a tax lien should be filed or levied against me, or an attachment or garnishment should be issued against any of my property or rights; or
10. If you should consider any of my obligations to you under this or under any other agreement, contract, note or instrument unsafe or not completely secure, or if you should believe, in good faith, that my chances of payment or of other performance under this or under any other agreement, contract, note or instrument have been impaired.

**Repossession.** I agree that if I do not comply with the terms of this Contract, then you may repossess the Collateral and take possession of it immediately without giving me notice before doing so and without filing an action with the court. You have my permission to enter any premises where the Collateral is located to recover the Collateral. If requested, I will promptly get the Collateral together and deliver it to you.

**Rights and Remedies.** If I am in default, you shall have all rights and remedies as provided under the Georgia Uniform Commercial Code and other remedies allowed by law, including the right of repossession and power of sale, which is coupled with an interest and is irrevocable. All of your rights and remedies are cumulative and may be exercised by you concurrently. Failure or delay by you to exercise any of your rights and remedies at any time will not mean that you have given up or lost the right to exercise that right or remedy or any other right or remedy at a later time.

**Acceleration and Waiver of Notice.** If I am in default, you may require me to pay at once the total balance due under this Contract, along with other debts I might owe to you, without giving me prior notice of demand, dishonor, presentment, or protest.

**Right of Offset.** If I am in default, I authorize you to exercise immediately your common law right of offset against any monies or credits I might have with you.

1491GA (0704)                                                                                                                      Page 3 of 4

BB&T CONFIDENTIAL

**No Waiver of Rights.** You may accept late or partial payments as well as delay enforcing any of your rights on any occasion, without losing your rights under this Contract.

**Collection Fees.** If I default under this Contract, I agree to pay all your collection and legal expenses, including your reasonable attorneys' fees. I agree that 15% of the sum of the unpaid principal and all accrued interest owing shall amount to your reasonable attorneys' fees.

**Credit Investigation.** I consent to your obtaining a consumer credit report for the purpose of reviewing my account, taking collection action on the account or for other legitimate purposes associated with the account. I understand that I may write or call any BB&T branch office with questions or inquiries about my account and that I should furnish my complete account number when doing so. I understand that if I dispute the accuracy, or completeness of any information supplied by BB&T in a consumer report furnished by a consumer reporting agency I may write: BB&T Loan Services, MC: 100-50-02-57, P.O. Box 2306, Wilson, NC 27893.

**Responsibility of Persons Under This Contract.** If more than one person signs this Contract, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in the Contract. Any Guarantor, surety, or endorser of this Contract is also obligated to do these things. You may enforce your rights under this Contract against each of us individually or against all of us together.

**Actions Taken on My Behalf.** If I fail to do anything I am required to do under this Contract or any other agreement with you, such as to discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Collateral place and pay for any insurance thereon, order and pay for the repair, maintenance and preservation thereof or pay any necessary recording or filing fees, you may, in your sole discretion and without further obligation, take these acts on my behalf as you see fit. These amounts so spent will be added to the unpaid balance of what I owe you under this Contract and the rate of interest accruing on the unpaid principal balance of the Contract will be applied until I fully repay you. You may, but are not obligated to, increase the amounts of my payments under this Contract to cover the resulting total unpaid balance. I agree to make those new payment amounts if you so notify me. You also will be protected by your security interest(s) as to these amounts in that Collateral securing shall also secure these amounts. However, any Payment Protection will not cover these additional amounts or any resulting additional interest. I understand that any insurance required for me upon my failure to maintain such insurance, such as property insurance, will only protect your interest in the Collateral. You are under no obligation to purchase insurance to protect my interest, if any, in the Collateral, or to otherwise satisfy any legal requirement such as those for liability insurance covering personal injury and property damage to others.

**Governing Law.** This Contract shall be governed by the law of the State of Georgia; provided however that any Security Deed encumbering the Borrower's property located in a state other than Georgia shall be governed by and construed in accordance with laws of that state, and the Borrower hereby submits to the jurisdiction of the state in which the property is located in connection with any foreclosure or enforcement proceeding undertaken in connection with the Borrower's property. This is the entire agreement between you and me. No other agreements or understandings exist outside of this document. Time is of the essence of this Agreement.

**Arbitration.** Any unresolvable controversy or claim between us including but not limited to those arising out of or relating to this instrument, agreement, or document or any related instruments, agreements, or documents shall be determined by binding arbitration in accordance with the Comprehensive Arbitration Rules and Procedures of J.A.M.S./ Endispute or any successor thereof ("J.A.M.S."), and the rules set forth herein. Judgment upon any arbitration award may be entered in any court having jurisdiction. The arbitration award shall include (1) a provision that the prevailing party in such arbitration shall recover its costs of the arbitration and reasonable attorneys' fees from the other party; and (2) the amount of such costs and fees.

Arbitration hearings will be held in Winston-Salem, North Carolina for North Carolina Contracts, Columbia, South Carolina for South Carolina Contracts and Richmond, Virginia for Virginia Contracts or such other city as you and I may mutually agree. The arbitration shall be administered by J.A.M.S., who will appoint one (1) arbitrator who shall be a retired judge or retired attorney experienced in bank lending contracts. All arbitration hearings will be commenced within 90 days of the other party's receipt of written demand for arbitration; further, the arbitrator only shall be permitted, upon a showing of cause, to extend the commencement of such hearing for up to an additional 60 days. Any controversy or claim subject to this arbitration provision not submitted to arbitration within one (1) year after such cause of action has accrued shall be deemed barred notwithstanding any longer statute of limitations available at law. Notwithstanding the foregoing, unless previously arbitrated in the event of any default in any obligation I owe to you, you may file a civil action against me to collect amounts owed by me to you at any time within three (3) years form the last event of default.

Nothing in this arbitration provision shall be deemed to (1) Permit the arbitration of a controversy or claim (even identical) with another person or permit class-wide arbitration; or (2) limit the applicability of any otherwise applicable waivers contained in this instrument, agreement, or document; or (3) be a waiver by you of the protection afforded to it by otherwise applicable federal or state law; or (4) limit your right (a) to exercise self-help remedies against me such as (but not limited to) setoff; (b) to institute and maintain foreclosure or sale against any personal and real property collateral, or (c) to petition a court for provisional or ancillary remedies such as (but not limited to) injunctive relief or writ of possession. You may exercise such self-help rights, foreclosure upon such property, or obtain such provisional or ancillary remedies before, during, or after the pendency of any arbitration proceeding brought pursuant to this instrument, agreement, or document. Neither this exercise of self-help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies shall constitute a waiver of the right of any party, including the claimant in any such action, to arbitrate the merits of the controversy or claim necessitating resort to such remedies.

## Guaranty of Third Persons

By signing below and to induce you to grant the requested credit extension to the Debtor, I/we unconditionally guarantee the prompt payment when due to you, Branch Banking and Trust Company, and any other holder of the above Note of the entire amount owing on the Note if the Debtor (s) default(s) in payment or performance of any obligations to you. This is a guaranty of payment and not of collection. I/we waive notice of acceptance of this guaranty and agree you don't have to notify me/us if any payments under the Note have not been paid or if the Debtor(s) has (have) otherwise defaulted. You can change the terms of the Note or the schedule of payments or release any security or any Debtor without notifying me or releasing me from responsibility under this guaranty. I agree to be bound by all terms of the Note and agree to pay all amounts owing under the Note, on demand, without requiring you to bring suit or take other action against the Debtor(s) or any collateral for the Contract. In addition, each of the undersigned expressly waives any right to require you to recover against the Debtor(s) or any collateral pursuant to any applicable law, statute or regulation, including the provisions of O.C.G.A. § 10-7-24 et seq. If you sue to enforce this guaranty agreement, I/we agree to pay the reasonable attorneys' fees of the holder of this guaranty equal to 15% of the outstanding balance owing on the Contract.

This guaranty is the joint and several obligation of each of us. Witness the hand(s) and seal(s) of the undersigned. I/We herewith adopt as my/our seal the word (SEAL) appearing above, beside or near my/our signature(s) below:

_____          _____ (SEAL)
                Witness

                                                  _____
                                                                (Address)

_____          _____ (SEAL)
                Witness

                                                  _____
                                                                (Address)

Case 09-04094-mgd Doc 1 Filed 09/01/09 Entered 09/01/09 17:58:39 Desc Main Document Page 16 of 23
Case 1:09-bk-12715 Claim 9-1 Filed 06/30/09 Desc Main Document Page 3 of 10
(Page 1 of 4)
BB&T CONFIDENTIAL

# BB&T  RETAIL NOTE AND SECURITY AGREEMENT

CUSTOMER NUMBER _____
NOTE NUMBER _____
DATE  December 19, 2006

CREDITOR: BRANCH BANKING AND TRUST COMPANY, 200 WEST SECOND STREET, WINSTON-SALEM, NORTH CAROLINA 27101

DEBTOR(S): ROGER A RAY
NAME

(In this Retail Note and Security Agreement (also called Contract) the words, I, me, my, mine and us mean each and all of those signing the Contract. The words you, your, and yours mean Branch Banking and Trust Company.) In return for a loan that I have received from you, I promise to pay to your Order at the office in the above city the amount of:

FIFTEEN THOUSAND ONE HUNDRED DOLLARS & 00/100

U.S. $ ___15,100.00___ (the "principal"), plus interest on the unpaid principal from the date of this Contract at the yearly (choose one only):
[X] FIXED RATE OF ___9.750___ %; OR
[ ] VARIABLE RATE OF _____ %, TO BE ADJUSTED _____ BASED UPON _____
INDEX + MARGIN
THE INITIAL RATE

but shall in no event exceed the maximum rate allowed under applicable law, together with insurance charges and LATE CHARGES if any, according to the Payment Schedule and other Contract terms as set forth below in the Special Regulation Z Truth in Lending Disclosure Box (herein Special Regulation Z Disclosures) and according to other Note terms as provided below:

Interest: Interest will be charged on that part of the principal which has not been paid and unless I have the right to rescind, will be charged beginning on the date of this Note and continuing until the full amount has been paid.

[ ] If checked here, I have the right to rescind this loan. If I choose not to do so, I understand my interest charges will begin to accrue on _____.

Security for Payment and Performance. To protect you if I default in the payment or performance of any obligation arising under the terms of the Contract, I grant you a security interest in certain property and in all additions, accessions, parts, and equipment attached to property and in all substitutions, along with any proceeds of that property (hereinafter collectively referred to as "Collateral") as described below:

[ ] If checked here, I have given you a security interest in certain personal property as described in a separate Assignment or Security Agreement ("Security Agreement") and/or I have executed a security deed ("Security Deed") in favor of you which when recorded will be a lien on real property described in that document.

[X] If checked here, I have given you a security interest in certain personal property as described below.

MANUFACTURED HOME

Collateral Description:

| YEAR | MAKE | TYPE BODY | MODEL | SERIAL NUMBER(S) | SIZE | BEDROOMS |
|------|------|-----------|-------|------------------|------|----------|
| 2005 | tahoe | TT | transport | 4xtm18225c158404 | | |

OTHER _____

Except as to any collateral Borrower(s) now use or are purchasing to use as Borrower(s)' principal dwelling (such as a mobile home), this security interest shall also secure any other outstanding or future debts of Borrower(s) to Bank. The collateral will normally be kept at this address: _____

If the property is affixed or is to be affixed to real estate, the real estate is described as follows: _____
and the record owner is: _____

## SPECIAL REGULATION Z DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost me | Amount Financed The amount of credit provided to me or on my behalf | Optional Payment Protection | Total of Payments The amount I will have paid after I have made all payments as scheduled |
|---|---|---|---|---|
| 10.099 % | E $ 3,295.32 | $ 15,000.00 | E $ | E $ 18,295.32 |

MY PAYMENT SCHEDULE WILL BE:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 48 | $381.15 | Monthly, Beginning January 19, 2007 |

SECURITY: I am giving a security interest in:
[ ] The goods or property being purchased.
[X] Other  Recreational Vehicle/Travel Trailers
Collateral securing other loans may also secure this loan.

FILING FEES AND TAXES $ _____
PREPAYMENT: If I pay off early, I may have to pay a penalty. I understand that I will not be entitled to a rebate of my prepaid Finance Charges.

REQUIRED DEPOSIT: If your loan is secured by a deposit earning less than 5%, the annual percentage rate does not take into account your required deposit.

LATE CHARGE: If a payment or any part of a payment (except (or Single Pay loans) is past due 10 or more days after the due date, I will be charged 5% (not to exceed a maximum of $250) of the amount of the payment past due. When an installment payment is past due 10 or more days, subsequent payments will first be applied to the past due balance.

VARIABLE RATE: [ ] If checked here, my loan contains a variable rate feature and is secured by my principal dwelling. Disclosures about the variable rate feature have been provided to me earlier. The maximum Annual Percentage Rate that may be imposed is 18%, or 16% if your loan amount is $25,000 or less.
[ ] If checked here, my loan contains a variable rate feature, but is not secured by my principal dwelling and has a maturity of one year or less. The ANNUAL PERCENTAGE RATE may increase or decrease on my loan as the _____ increases or decreases.
My rate will not change more often than _____ and it will not increase above _____ %; nor decrease below _____ %. Any increase in rate will result in [ ] higher payments, or [ ] additional payments, or [ ] higher final payment.
(See HYPOTHETICAL VARIABLE RATE EXAMPLES below.)

ASSUMPTION NOTICE: If this loan finances the purchase of property to be used as my principal dwelling, someone buying my dwelling cannot assume the remainder of this loan under the original terms.

Information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties appears in my contract document.
E means an estimate                    (If a box [ ] is not checked that term does not apply.)

## HYPOTHETICAL VARIABLE RATE EXAMPLES

Higher Payments: If my loan were for $5,000 at a rate of 15% with 36 monthly payments of $174.04 and the rate increased by 2% after three months, my payments would increase to $178.63.
Additional Payments: If my loan were for $5,000 at a rate of 15% with 36 monthly payments of $174.04 and the rate increased by 2% after three months, I would pay one additional payment of $174.04 and a final payment of $20.40.
Higher Final Payment: If my loan were for $5,000 at a rate of 15% with 36 monthly payments of $174.04 and the rate increased by 2% after three months, my final payment would increase to $365.43.

THIS AGREEMENT IS SUBJECT TO THE ADDITIONAL TERMS AND CONDITIONS FOUND ON PAGES 2, 3, AND 4 WHICH ARE INCORPORATED HEREIN BY REFERENCE

ACCOUNT# / NOTE#



Exhibit "C"

Case 1:09-bk-12715    Claim 9-1    Filed 06/30/09    Desc Main Document    Page 4 of 10

## ITEMIZATION OF AMOUNT FINANCED

The Amount Financed of $ _____ 15,000.00 _____ is distributed as follows:

Amount given to me directly _____    $ _____ 15,000.00

Amount paid on my account _____    $ _____

Amount paid to others on my behalf
  (a) Insurance Companies    $ _____
  (b) Public Officials (Filing,
    Recording Fees and Taxes)    $ _____

(c) Appraisal Fee _____    $ _____

(d) Attorney's Fees to _____    $ _____
(e) Title Insurance Premium
  to _____    $ _____

(f) Other _____    $ _____

  Other _____    $ _____
(g) Origination Fee, Flood Fee    $ _____ 100.00

Less: Prepaid Finance Charges (loan fee, flood fee, etc.) $ _____ 100.00

---

**Insurance Products are**

- Not a deposit or other obligations of, or guaranteed by BB&T or its affiliates.
- Not insured by the Federal Deposit Insurance Corporation (FDIC) or any other agency of the United States or by BB&T or its affiliates.
- If applicable, there is investment risk associated with the insurance product, including the possible loss of value.

---

### DRAFT AUTHORIZATION

Please debit my acct. # _____

for my loan payment each time it is due.

_____
Authorized Signature

---

### OPTIONAL BB&T PAYMENT PROTECTION OPTIONS

The purchase of BB&T Payment Protection is not required for obtaining credit and will not be provided unless I (we) sign below, boxes are checked to show the protection I (we) want, and I (we) sign the separate agreement for this protection. I (We) understand that I (we) may cancel the protection at any time. The protection is for the stated term of the Retail Note.

Protected Events

☐ Yes, I want single Loss of Life and
  Terminal Illness protection at a cost of: $ _____

☐ Yes, we want joint Loss of Life and
  Terminal Illness protection at a cost of: $ _____

☐ Yes, I (primary protected borrower) want
  Disability protection at a cost of: $ _____

Protected Debtor _____

Protected Debtor _____

☐ Yes, I want Job Loss protection
  at a cost of: $ _____

Protected Debtor or Co-Debtor _____

☒ No, I(we) do not want any Payment Protection or I(we) understand that I(we) am(are) not eligible for Payment Protection.

x RR
Debtor's Initials

---

PROPERTY INSURANCE-I may obtain Property Insurance from anyone I desire that is acceptable to you. If I obtain property insurance from BB&T, I will pay the premium shown below. No insurance is provided unless the premium is shown.

I want property insurance from BB&T at a cost of

$ _____ for a term of _____ months.

---

THIS CONTRACT IS SIGNED AND ACCEPTED SUBJECT TO THE ADDITIONAL TERMS AND PROVISIONS CONTAINED ON PAGES 3 AND 4 WHICH ARE MADE PART OF THIS CONTRACT BY REFERENCE

EXECUTION/ACKNOWLEDGEMENT OF RECEIPT OF DISCLOSURES

The Undersigned acknowledge(s) receipt of a completed copy of this Note and Disclosure contained herein which Disclosures were made prior to signing. Witness our hand(s) and Seal(s), which are adopted by us.

WITNESS: _____    Debtor _____ (SEAL)
                                            ROGER A. RAY

WITNESS: _____    Debtor _____ (SEAL)

WITNESS: _____    Debtor _____ (SEAL)

WITNESS: _____    Debtor _____ (SEAL)

BB&T CONFIDENTIAL

**I ALSO AGREE TO THESE ADDITIONAL TERMS:**

**Payments.** I have promised to repay this Contract under the payment schedule as set forth on page 1 in the Special Regulation Z Disclosure box. I understand that you will normally apply all full and timely scheduled installments under this Contract first to accrued interest, then to payment protection fees, if any, then to the unpaid principal balance. I may repay this Contract at any time, either in full or in part, provided I also pay the payment protection fees, if any, and accrued interest due through the date of my early payment, and repay closing costs as required by this Contract. Bank shall not be obligated to accept any check, money order, or other payment instrument marked "payment in full" on any disputed amount due hereunder, and Bank expressly reserves the right to reject all such payment instruments. Borrower agrees that tender of its check or other payment instrument so marked will not satisfy or discharge its obligation under this Note, disputed or otherwise, even if such check or payment instrument is inadvertently processed by Bank unless in fact sufficient to pay the amount due hereunder.

Borrower agrees that the only interest charge is the interest actually stated in this Note, and that any loan or origination fee shall be deemed charges rather than interest, which charges are fully earned and non-refundable. It is further agreed that any late charges are not a charge for the use of money but are imposed to compensate Bank for some of the administrative services, costs and losses associated with any delinquency or default under this Note, and said charges shall be fully earned and non-refundable when accrued. All other charges imposed by Bank upon Borrower in connection with this Note and the loan including, without limitation, any commitment fees, loan fees, facility fees, origination fees, discount points, default and late charges, prepayment fees, statutory attorneys' fees and reimbursements for costs and expenses paid by Bank to third parties or for damages incurred by Bank are and shall be deemed to be charges made to compensate Bank for underwriting and administration services and costs, and losses and costs or losses incurred and are to be incurred by Bank in connection with this Note and the loan and shall under no circumstances be deemed to be charges for the use of money. All such charges shall be fully earned and non-refundable when due. This Paragraph is excepted for the purpose of clarifying the status of charges of the Loan for purpose of O.C.G.A. § 7-4-2(e)(1) and (2)(3).

**Estimated Credit Terms.** I understand that the disclosed charges for Payment Protection coverage are applied on a daily basis. In addition, the interest accrues on the outstanding principal balance on a daily basis. Consequently, the amount you have disclosed for the Finance Charge, Payment Protection charges and the Total of Payments are estimates and the actual amounts paid may increase or decrease based upon my payment habits.

**Prime Rate.** If the words "Prime Rate," "Bank Prime Rate," "BB&T Prime Rate," or "BB&T's Prime Rate," are used in this Agreement, they shall refer to the rate announced by the Bank from time to time as the Prime Rate. I understand the Bank makes loans both above and below the Prime Rate and uses indexes other than the Prime Rate. Prime Rate is the name given a rate index used by the Bank and does not in itself constitute a representation of any preferred rate or treatment.

**Security.** Unless otherwise provided herein, it is expressly understood and agreed that any and all Collateral (including but not limited to, real property, personal property, fixtures, inventory, accounts, instruments, general intangibles, documents, chattel paper and equipment) given as security to insure my faithful performance and that of any third party of any or all obligations to you, however created, whether now existing or hereafter arising, shall remain as security for the Retail Note(s). It is understood and agreed that if you release any property herein, you will not be required or obligated to take any further steps to release said property from any lien or security interest unless you determine, in your sole discretion, that you may do so without consequence to your secured position and relative priority in other property; and unless I bear the reasonable cost of such action. All homestead and exemptions are hereby waived.

**Severability.** Whenever possible, the provisions of this Contract shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Contract shall be prohibited by or invalid under such law, such provisions shall be ineffective to the extent of any such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Contract.

**Ownership and Disposition.** I am the owner of the collateral, and if there is a title to the Collateral, I will promptly deliver it upon request. I will not sell, lease, make a gift of, create a lien upon or otherwise dispose of the Collateral without your prior written consent.

**Location and Inspection.** You have the right to inspect the Collateral at any reasonable place and time. I will cooperate fully to make the Collateral available for your inspection within three days of your request. I will keep the property at the address shown on the reverse side, which is the State of Georgia. I shall not use the Collateral outside the United States without your prior written consent. If I move the Collateral to another location, I shall promptly notify you.

**Additions and Substitutions of Property.** All equipment, accessories and parts added by me will become part of the Collateral by accession. With your prior written consent, I may substitute other property for the Collateral in which event, all rights, duties, obligations, remedies and security interests shall cover fully any such substituted property.

**Financing Statement.** I will sign any financing statements, continuation statements and security interests filing statements regarding the Collateral and will pay all expenses of preparing and recording such statements when requested by you. I also grant you my Power of Attorney, which is irrevocable and is coupled with an interest, and which shall be effective so long as any amount is unpaid on the obligations secured by this contract and which gives you the right to sign my name on any financing statement you wish to file. I further specifically authorize you to file financing statements without my signature in any locations you believe necessary.

**Other Security Interests.** There are no other security interests or any other liens on the Collateral other than yours and those which I have disclosed to you in writing. I will not place, or allow to be placed any other security interest or lien on the Collateral while this Contract is still in force without your prior written consent. Should a lien of any kind be placed on the Collateral, I will promptly see that it is paid, satisfied, cancelled and removed.

**Maintenance.** I will keep the Collateral in good condition and good repair and I will not allow anything to be done to or with the Collateral that would lessen its value, except for normal use.

**Insurance.** I will keep the collateral insured at all times with the type of insurance and in such manner as you require. I shall pay all premiums for such insurance when they are supposed to be paid so my insurance will not lapse. If the collateral is damaged or destroyed, I understand that it is my loss and not yours. If I do not keep the required insurance in force or do not pay the premiums when due, you can force place collateral protection insurance which does not provide liability coverage, but which insures your interest in the collateral with a policy written for the remaining term of my loan and backdated to the date of any lapse in coverage. I authorize you to obtain coverage as contained in your program of insurance and collateral protection policy as in effect from time to time under the terms of which are incorporated herein by reference which may include coverage in the U.S., Mexico, and Canada, a maximum of $50,000.00 coverage limited to the least of the cost to repair or replace any vehicle with another of like kind and quality, actual cash value or the net payoff on my loan. I authorize you to obtain this coverage and acknowledge you will earn a commission for placing this insurance. You may elect the cost of this coverage to the outstanding balance of the Contract and it shall bear interest at the lessor of the Contract Rate or sixteen percent (16%) per annum until paid. You may also increase the amount of my monthly payment such that the loan will be paid at maturity (may include irregular final payment). In the alternative, a balloon payment will be due at maturity. However, I understand that you do not have to cover the collateral with insurance. If you do not insure the collateral, none of your rights or remedies against me will be prejudiced. I agree that only the primary debtor will receive notices regarding insurance matters and corresponding modifications to my payment schedule, if any. Any amount you pay for me will be secured by this security interest I have granted to you. All insurance proceeds under any insurance policy shall be payable to you for the amount of any money I owe to you. I will deliver to you the insurance policy or policies or a certificate of insurance, which may be applicable for insurance which I obtain. I give and assign to you any unearned insurance premiums which may be returned on cancellation of any insurance policy and agree that refund of any collateral protection insurance placed by you will be calculated and paid under the "Rule of 78's". I appoint you my attorney-in-fact, which is irrevocable and coupled with an interest, to settle any insurance claim and to endorse any draft or check which may be payable to me so as to collect any unearned insurance premiums or insurance proceeds. I understand that all insurance proceeds and returned insurance premiums received by you will be applied against the money I owe you and any balance remaining will be paid to me. You owe me no fiduciary duty as to claims or placing insurance.

**Subordination.** I understand and agree that if I make a request of the Bank to subordinate the lien position of my account to another lienholder, you may charge and collect a fee of $100 for the processing costs associated with this service.

**Repayment of Closing Costs.** If the Bank pays any or all of the closing costs to establish my account, and I elect to terminate my account within three years of the origination date, I will be asked to repay some or all of the closing costs paid to outside providers on my behalf. These costs may include, but are not limited to: title insurance premiums, attorney, appraisal, flood certification, and recording fees.

**Dishonored Instrument Charge.** I understand that if I make a payment by an instrument that is not paid or is dishonored by the institution on which it was drawn, you may charge $25.00 or 5 percent of the face amount of the instrument, whichever is greater, as a bad instrument charge.

**Release Fee.** You may be assessed a lien release fee, at the time your loan is paid off, of an estimated amount of $31.00 which will be based on the amount currently charged by the county or state for releasing your lien.

**Events of Default.** I will be in default under this Contract if any of the following events take place:

1. If I fail either to make a payment on time, or to perform all of my obligations under this Contract or any other agreement I have made with you either now or in the future; or
2. If I or any other person or entity obligated under any other contract, note, agreement or document given in connection with this credit transaction, either now or in the future (herein "Obligor"), violates any term, provision or covenant contained therein; or
3. If I fail to furnish you information sufficient to verify my identity as required under the USA Patriot Act; or
4. If I or any Obligor make a false or materially misleading statement to you in connection with this or any other credit transaction; or
5. If I or any Obligor die, become insolvent or bankrupt; or
6. If the Collateral, if any, has been substantially damaged or lost or stolen; or
7. If I or any Obligor fail(s) to provide adequate and continuous insurance on any Collateral, as required by the Retail Note(s) or this Agreement or any other agreement with you; or
8. If I or any Obligor should use the Collateral, if any, in violation of any law, rule, regulation or government order; or
9. If a judgment or lien, including a tax lien should be filed or levied against me, or an attachment or garnishment should be issued against any of my property or rights; or
10. If you should consider any of my obligations to you under this or under any other agreement, contract, note or instrument unsafe or not completely secure, or if you should believe, in good faith, that my chances of payment or of other performance under this or under any other agreement, contract, note or instrument have been impaired.

**Repossession.** I agree that if I do not comply with the terms of this Contract, then you may repossess the Collateral and take possession of it immediately without giving me notice before doing so and without filing an action with the court. You have my permission to enter any premises where the Collateral is located to recover the Collateral. If requested, I will promptly get the Collateral together and deliver it to you.

**Rights and Remedies.** If I am in default, you shall have all rights and remedies as provided under the Georgia Uniform Commercial Code and other remedies allowed by law, including the right of repossession and other rights, which is coupled with an interest and is irrevocable. All of your rights and remedies are cumulative and may be exercised by you concurrently. Failure or delay by you to exercise any of your rights and remedies at any time will not mean that you have given up or lost the right to exercise that right or remedy or any other right or remedy at a later time.

**Acceleration and Waiver of Notice.** If I am in default, you may require me to pay at once the total balance due under this Contract, along with other debts I might owe to you, without giving me prior notice of demand, dishonor, presentment, or protest.

**Right of Offset.** If I am in default, I authorize you to exercise immediately your common law right of offset against any monies or credits I might have with you.

BB&T CONFIDENTIAL

**No Waiver of Rights.** You may accept late or partial payments as well as delay enforcing any of your rights on any occasion, without losing your rights under this Contract.

**Collection Fees.** If I default under this Contract, I agree to pay all your collection and legal expenses, including your reasonable attorneys' fees. I agree that 15% of the sum of the unpaid principal and all accrued interest owing shall amount to your reasonable attorneys' fees.

**Inquiries About Your Account.** When writing or calling about your account, please furnish your complete account number. For questions or inquiries about your account, you may contact any BB&T branch office. If you dispute the accuracy or completeness of any information supplied by BB&T in a consumer report furnished by a consumer reporting agency, please write:
BB&T Loan Services
P. O. Box 2306
Wilson, NC 27893
NC: 100-50-02-57

**Responsibility of Persons Under This Contract.** If more than one person signs this Contract, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in the Contract. Any Guarantor, surety, or endorser of this Contract is also obligated to do these things. You may enforce your rights under this Contract against each of us individually or against all of us together.

**Actions Taken on My Behalf.** If I fail to do anything I am required to do under this Contract or any other agreement with you, such as to discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Collateral place and pay for any insurance thereon, order and pay for the repair, maintenance and preservation thereof or pay any necessary recording or filing fees, you may, in your sole discretion and without further obligation, take these acts on my behalf as you see fit. These amounts so spent will be added to the unpaid balance of what I owe you under this Contract and the rate of interest accruing on the unpaid principal balance of the Contract will be applied until I fully repay you. You may, but are not obligated to, increase the amounts of my payments under this Contract to cover the resulting total unpaid balance. I agree to make those new payment amounts if you so notify me. You also will be protected by your security interest(s) as to these amounts in that Collateral securing shall also secure these amounts. However, any Payment Protection will not cover these additional amounts or any resulting additional interest. I understand that any insurance purchased for me upon my failure to maintain such insurance, such as property insurance, will only protect your interest in the Collateral. You are under no obligation to purchase insurance to protect my interest, if any, in the Collateral, or to otherwise satisfy any legal requirement such as those for liability insurance covering personal injury and property damage to others.

**Governing Law.** This Contract shall be governed by the law of the State of Georgia; provided however that any Security Deed encumbering the Borrower's property located in a state other than Georgia shall be governed by and construed in accordance with laws of that state, and the Borrower hereby submits to the jurisdiction of the state in which the property is located in connection with any foreclosure or enforcement proceeding undertaken in connection with the Borrower's property. This is the entire agreement between you and me. No other agreements or understandings exist outside of this document. Time is of the essence of this Agreement.

**Arbitration.** Any unresolvable controversy or claim between us including but not limited to those arising out of or relating to this instrument, agreement, or document or any related instruments, agreements, or documents shall be determined by binding arbitration in accordance with the Comprehensive Arbitration Rules and Procedures of J.A.M.S./ Endispute or any successor thereof ("J.A.M.S."), and the rules set forth herein. Judgment upon any arbitration award may be entered in any court having jurisdiction. The arbitration award shall include (1) a provision that the prevailing party in such arbitration shall recover its costs of the arbitration and reasonable attorneys' fees from the other party; and (2) the amount of such costs and fees.

Arbitration hearings will be held in Winston-Salem, North Carolina for North Carolina Contracts, Columbia, South Carolina for South Carolina Contracts and Richmond, Virginia for Virginia Contracts or such other city as you and I may mutually agree. The arbitration shall be administered by J.A.M.S., who will appoint one (1) arbitrator who shall be a retired judge or retired attorney experienced in bank lending contracts. All arbitration hearings will be commenced within 90 days of the other party's receipt of written demand for arbitration; further, the arbitrator only shall be permitted, upon a showing of cause, to extend the commencement of such hearing for us to an additional 60 days. Any controversy or claim subject to this arbitration provision not submitted to arbitration within one (1) year after such cause of action has accrued shall be deemed barred,notwithstanding any longer statute of limitations available at law. Notwithstanding the foregoing, unless previously arbitrated in the event of any default in an obligation I owe to you, you may file a civil action against me to collect amounts owed by me to you at any time within three (3) years form the last event of default.

Nothing in this arbitration provision shall be deemed to (1) Permit the arbitration of a controversy or claim (even identical) with another person or permit class-wide arbitration; or (2) limit the applicability of any otherwise applicable waivers contained in this instrument, agreement, or document; or (3) be a waiver by you of the protection afforded to it by otherwise applicable federal or state law; or (4) limit your right (a) to exercise self-help remedies against me such as (but not limited to) setoff; (b) to institute and maintain foreclosure or sale against any personal property collateral, or (c) to position a court for provisional or ancillary remedies such as (but not limited to) injunctive relief or writ of possession. You may exercise such self-help rights, foreclosure upon such property, or obtain such provisional or ancillary remedies before, during, or after the pendency of any arbitration proceeding brought pursuant to this instrument, agreement, or document. Neither the exercise of self-help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies shall constitute a waiver of the right of any party, including the claimant in any such action, to arbitrate the merits of the controversy or claim occasioning resort to such remedies.

### Guaranty of Third Persons

By signing below and to induce you to grant the requested credit extension to the Debtor(s), I/we unconditionally guarantee the prompt payment when due to you, Branch Banking and Trust Company, and any other holder of the above Note of the entire amount owing on the Note if the Debtor(s) default(s) in payment or performance of any obligations to you. This is a guaranty of payment and not of collection. I/we waive notice of acceptance of this guaranty and agree you don't have to notify me/us if any payments under the Note have not been paid or if the Debtor(s) has/have) otherwise defaulted. You can change the terms of the Note or the schedule of payments or release any security or any Debtor without notifying me or releasing me from responsibility under this guaranty. I agree to be bound by all terms of the Note and agree to pay all amounts owing under the Note, on demand, without requiring you to bring suit or take other action against the Debtor(s) or any collateral for the Contract. In addition, each of the undersigned expressly waives any right to require you to recover against the Debtor(s) or any collateral pursuant to any applicable law, statute or regulation, including the provisions of O.C.G.A. § 10-7-24 et seq. If you sue to enforce this guaranty agreement, I/we agree to pay the reasonable attorneys' fees of the holder of this guaranty equal to 15% of the outstanding balance owing on the Contract.

This guaranty is the joint and several obligation of each of us. Witness the hand(s) and seal(s) of the undersigned. I/We herewith adopt as my/our seal the word (SEAL) appearing above, beside or near my/our signature(s) below:


_____        _____(SEAL)
                Witness

                                  _____
                                                  (Address)

_____        _____(SEAL)
                Witness

                                  _____
                                                  (Address)

BB&T CONFIDENTIAL

1491GA (0506)                                                                Page 4 of 4

From: 404 366 0829        Page: 3/5        Date: 9/1/2009 2:15:41 PM 0

Dealer Internet Inquiry - Vehicle Inquiry | georgia.gov                    Page 1 of 2



**Georgia Technology Authority**

## Vehicle Inquiry

### Title Detail

| | |
|---|---|
| **VIN:** | 4X4FSAF237J021345 |
| **Vehicle Year:** | 2007 |
| **Vehicle Make:** | FORS |
| **Vehicle Model:** | SAF305RLW |
| **Vehicle Body Style:** | TRAILER |
| **Vehicle Cylinders:** | 0 |
| **Vehicle Body Color:** | WHITE |
| **Vehicle Odometer Reading:** | 0 |
| **Vehicle Odometer Code:** | |
| **Dealer Sale:** | YES |
| **Dealer Name:** | NORTH GEORGIA RV CENTER |
| **Dealer Address:** | 129 CHRISTIAN RD |
| **Dealer City/State/Zip:** | RINGGOLD GA 30736-2429 |
| **Title Number:** | 775225090264037 |
| **Print Date:** | 02/17/2009 |
| **Title Status:** | CURRENT TITLE, NOT HELD |
| **Title Legend:** | NO LEGENDS FOUND |

### Owner's Section

| | |
|---|---|
| **Number of Owners:** | 02 |
| **Owner Name:** | DONALD H FLACK |
| **Owner Name:** | DONNA LUNGER FLACK |

### Lienholder Section

| | |
|---|---|
| **Number of Lienholders:** | 1 |
| **Lienholder 1 Name:** | US BANK N/A |
| **Lienholder 1 Address:** | PO BOX 3427 |
| **Lienholder 1 City:** | OSHKOSH |
| **Lienholder 1 State:** | WI, 54903-3427 |

### Registration Information

| | |
|---|---|
| **Purchase Date:** | 09/29/2008 |
| **New/Used:** | NEW VEHICLE |
| **Farm Vehicle:** | NO |
| **Tag:** | TL48675 |
| **Decal Number:** | 98129944 |
| **Expiry Date:** | 06/07/2010 |



Dealer Internet Inquiry - Vehicle Inquiry | georgia.gov

Page 2 of 2

| | |
|---|---|
| **Tag Category:** | TR - TRAILER |
| **Valuation:** | 0 |
| **County:** | 028 BARTOW |
| **District:** | 06 BARTOW |
| **Leased Vehicle:** | No |

Dealer Internet Inquiry - Vehicle Inquiry | georgia.gov



## Vehicle Inquiry

### Title Detail

| | |
|---|---|
| **VIN:** | 4XTTN18225C158404 |
| **Vehicle Year:** | 2005 |
| **Vehicle Make:** | THOO |
| **Vehicle Model:** | TRANSPORT |
| **Vehicle Body Style:** | TRAVEL TRAILER |
| **Vehicle Cylinders:** | 0 |
| **Vehicle Odometer Reading:** | 0 |
| **Vehicle Odometer Code:** | |
| **Dealer Sale:** | YES |
| **Dealer Name:** | NORTH GEORGIA RV CENTER |
| **Dealer Address:** | 129 CHRISTIAN RD |
| **Dealer City/State/Zip:** | RINGGOLD GA 30736-2429 |
| **Title Number:** | 774023071832037 |
| **Print Date:** | 07/05/2007 |
| **Title Status:** | CURRENT TITLE, NOT HELD |
| **Title Legend:** | NO LEGENDS FOUND |

### Owner's Section

| | |
|---|---|
| **Number of Owners:** | 01 |
| **Owner Name:** | WILLIAM LAMAR ROBERTS |

### Lienholder Section

| | |
|---|---|
| **Number of Lienholders:** | 0 |

### Registration Information

| | |
|---|---|
| **Purchase Date:** | 05/25/2007 |
| **New/Used:** | USED VEHICLE |
| **Farm Vehicle:** | NO |
| **Tag:** | TL9981P |
| **Decal Number:** | 95117541 |
| **Expiry Date:** | 01/05/2010 |
| **Tag Category:** | YR - TRAILER |
| **Valuation:** | 0 |
| **County:** | 017 WHITFIELD |
| **District:** | 01 WHITFIELD |
| **Leased Vehicle:** | No |

Exhibit "E"

B6I (Official Form 6I) (12/07)

In re **Roger A Ray** _____    Case No.   **09-12715** _____
                        Debtor                                              (If known)

# SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child. The average monthly income calculated on this form may differ from the current monthly income calculated on Form 22A, 22B, or 22C.

| Debtor's Marital Status: **Married** | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| | RELATIONSHIP(S): | AGE(S): |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | **Camper Sales & Service** | Bank Teller |
| Name of Employer | **Roger A. Ray Enterprises, Inc.** | Wachovia |
| How long employed | **10 years** | 20 years |
| Address of Employer | **129 Christian Road Ringgold, GA 30736** | Dalton, GA |

INCOME: (Estimate of average or projected monthly income at time case filed)

| | DEBTOR | SPOUSE |
|---|---|---|
| 1. Monthly gross wages, salary, and commissions (Prorate if not paid monthly.) | $ 0.00 | $ 620.00 |
| 2. Estimate monthly overtime | $ 0.00 | $ 0.00 |
| 3. SUBTOTAL | $ 0.00 | $ 620.00 |
| 4. LESS PAYROLL DEDUCTIONS | | |
| a. Payroll taxes and social security | $ 0.00 | $ 0.00 |
| b. Insurance | $ 0.00 | $ 0.00 |
| c. Union dues | $ 0.00 | $ 0.00 |
| d. Other (Specify) _____ | $ 0.00 | $ 0.00 |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $ 0.00 | $ 0.00 |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ 0.00 | $ 620.00 |
| 7. Regular income from operation of business or profession or farm (Attach detailed statement) | $ 3,000.00 | $ 0.00 |
| 8. Income from real property | $ 0.00 | $ 0.00 |
| 9. Interest and dividends | $ 0.00 | $ 0.00 |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above. | $ 0.00 | $ 0.00 |
| 11. Social security or other government assistance (Specify) _____ | $ 0.00 | $ 0.00 |
| 12. Pension or retirement income | $ 0.00 | $ 0.00 |
| 13. Other monthly income (Specify) _____ | $ 0.00 | $ 0.00 |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $ 3,000.00 | $ 0.00 |
| 15. AVERAGE MONTHLY INCOME (Add amounts shown on lines 6 and 14) | $ 3,000.00 | $ 620.00 |
| 16. COMBINED AVERAGE MONTHLY INCOME: (Combine column totals from line 15) | $ 3,620.00 | |

(Report also on Summary of Schedules and, if applicable, on Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document.:
**Starting new business** _____